UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HEATHER SCHUMACHER, | ) |
| Plaintiffs, | ) ) ) |
| v. | ) No. 18 C 7528 |
| STERIGENICS U.S., LLC; BOB NOVAK; ROGER CLARK; and GTCR, LLC; | ) Judge Rebecca R. Pallmeyer ) ) |
| Defendants. | ) ) |
| AND RELATED ACTIONS | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs are Illinois residents who lived, at various times, in close proximity to a sterilization facility owned and operated by Defendant Sterigenics U.S., LLC ("Sterigenics") in Willowbrook, Illinois.[1] This facility, Plaintiffs assert, released harmful emissions into the air, causing Plaintiffs to develop various types of cancer. In 2018, Plaintiffs filed eleven separate complaints in the Circuit Court of Cook County, asserting various state law causes of action related to the release of emissions from the Sterigenics facility.[2] The Defendants in all of these cases are (1) Sterigenics; (2) Bob Novak, a manager at the Sterigenics facility; (3) Roger Clark, a former supervisor at the Sterigenics facility; and (4) GTCR, LLC ("GTCR"), a private equity firm

---

[1] As is discussed in more detail, *infra*, although only Plaintiff Heather Schumacher's case was initially removed to this court, a number of other cases have been consolidated here for purposes of ruling on Plaintiffs' omnibus motion to remand.

[2] *See Schumacher v. Sterigenics U.S., LLC et al.*, No. 1:18-cv-07528; *Kamuda, et al. v. Novak et al.*, No. 1:18-cv-07313; *Flanagan, et al. v. Novak et al.*, No. 1:18-cv-07314; *Moawad, et al. v. Sterigenics U.S., LLC et al.*, No. 1:18-cv-07315; *Harast v. Sterigenics U.S., LLC et al.*, No. 1:18-cv-07390; *Teresa Fornek v. Sterigenics U.S., LLC et al.*, No. 1:18-cv-07402; *Shawn Fornek v. Sterigenics U.S., LLC et al.*, No. 1:18-cv-07688; *Kennedy v. Sterigenics U.S. LLC et al*, No. 1:18-cv-07828; *Nedumgottil v. Sterigenics U.S. LLC et al.*, No. 1:18-cv-07830; *Govic v. Sterigenics U.S., LLC et al.*, No. 1:18-cv-08056; and *Haller v. Sterigenics U.S., LLC et al.*, No. 1:18-cv-08057.

that holds an ownership stake in Sterigenics. Defendants removed these cases to the Northern District of Illinois, asserting federal jurisdiction under 28 U.S.C. §§ 1331, 1332, 1441, and 1446. Now before the court is Plaintiffs' Omnibus Motion to Remand. For the reasons stated herein, Plaintiffs' motion is granted.

## **BACKGROUND**

The parties agree that the actions addressed in this opinion "have substantially similar pleadings and all removal petitions raise the same arguments." (Defs.' Opp. Mot. Remand [41] at 1 n.1 (quoting Mot. Remand [37] at 1).) The parties, moreover, appear to agree that "the substantive allegations in the complaints are the same," but neither party has prepared a consolidated statement of those allegations which bear on the jurisdictional issue. (Mot. Remand at 1.)[3] In preparing the summary of allegations set forth below, the court has relied on the complaint filed in *Kamuda, et al. v. Novak et al.*, No. 18-cv-07313, Exhibit A to Motion to Remand (hereinafter "*Kamuda* Complaint"), recognizing that "allegations differ slightly" across complaints. (Mot. Remand at 1.) Because the parties have not identified any disparities significant to the jurisdictional question, the court assumes that the *Kamuda* Complaint fairly represents the others for purposes of this motion, and deems waived any argument based on individual factual disparities.

I.  **Factual Background**

Sterigenics is a limited liability company which, in 1984, began operating a sterilization facility in Willowbrook, Illinois (the "Sterigenics facility"). (*Id.* ¶ 1.) As part of its sterilization procedures, the Sterigenics facility makes use of a gas known as ethylene oxide. (*Id.*) Referring to various governmental and non-governmental reports dating back to 1977, Plaintiffs contend

---

[3] Plaintiffs submit what purports to be a "factual background" in support of their motion, but their discussion centers only on factual disputes that Plaintiffs themselves characterize as "irrelevant to the jurisdictional issue." (*Id.* at 3-6.) In contrast, the fundamental allegations that *are* relevant to the jurisdictional issue—Plaintiffs' common claims, causes of action, named defendants, injuries, and the like—are addressed only piecemeal throughout the parties' briefing papers.

that "for more than 40 years" ethylene oxide "has been consistently recognized as dangerous, toxic, and carcinogenic." (*Id.* ¶ 41-50.) Despite the known risk, Plaintiffs assert, the Sterigenics facility has emitted "excessive, unnecessary, and/or dangerous volumes" of ethylene oxide into the air "on a routine and constant basis for 34 years." (*Id.* ¶¶ 66, 77.) In doing so, Sterigenics allegedly caused nearby residents to "unknowingly inhal[e] [ethylene oxide] in the air they breathe . . . ." (*Id.* ¶¶ 1-2.) This effect was worsened, Plaintiffs contend, by a series of decisions made by Sterigenics in managing the Willowbrook facility, including "failing to employ safe methods to adequately control, reduce, minimize, and/or mitigate [ethylene oxide] emissions from its Willowbrook facility" and "failing to adequately study and test the effect of its [ethylene oxide] emissions from its Willowbrook facility on the quality of air." (*Id.* ¶ 77.)

Plaintiffs' complaints describe incidents that, they allege, evince "a pattern of Sterigenics consistently failing to implement company-wide safety measures across all its facilities." (*Id.* ¶ 71.) These include fines paid to OSHA for safety violations at the Willowbrook facility, an accident investigated by the U.S. Chemical Safety and Hazard Investigation Board at a California facility, a prosecution for exceeding the local "Maximum Permissible Risk concentration" of ethylene oxide in the Netherlands, and anonymous employee reports of lax safety procedures. (*Id.* ¶¶ 67-70.) Additionally, Plaintiffs allege that Sterigenics failed to warn residents of nearby communities that it was emitting ethylene oxide into the air, and failed to adequately train its employees to control and dispose of ethylene oxide. (*Id.* ¶¶ 77, 81.)

Plaintiffs identify two Sterigenics employees allegedly involved in the use of ethylene oxide: Bob Novak and Roger Clark. Defendant Novak, a current resident of Illinois, allegedly began working as the Operations Manager of the Willowbrook facility in August 2003. (*Id.* ¶ 30.) In this capacity, Plaintiffs allege, Novak has been and remains responsible for "the operation of the facility, coordinating and overseeing all activities in plant operations, and overall plant safety," including "testing and analysis to determine the nature and extent of "ethylene oxide" emissions. (*Id.* ¶¶ 30, 122.) According to Plaintiffs, Novak was responsible for a series of lapses in safety,

3

including, *inter alia*, "[p]ermitting chamber doors to remain open during and/or after the sterilization process and thereby allowing dangerous amounts of ethylene oxide to escape the chamber area," "[f]ailing to timely order and/or replace filters for the dry system and thereby allowing excess amounts of ethylene oxide" to escape, and "failing to employee safe methods to adequately control, reduce, minimize, and/or mitigate [ethylene oxide] emissions" from the facility. (*Id.* ¶ 125.)

Defendant Clark, also a resident of Illinois, was allegedly the Maintenance Supervisor at the Willowbrook facility from the late 1980s until approximately 2015. (*Id.* ¶ 31.) In this capacity, according to Plaintiffs, Clark "was responsible for calibrating the internal [ethylene oxide] monitors and overseeing the maintenance activities at the Sterigenics facility." (*Id.*) Plaintiffs charge that Clark was also responsible for several lapses in safety including, *inter alia*, "[i]naccurately calibrating internal [ethylene oxide] monitors to allow for erroneous monitoring results." (*Id.* ¶ 139.)

The final Defendant is GTCR, a Chicago-based private equity firm that purchased Sterigenics in 2011. (*Id.* ¶ 21.) Plaintiffs allege that, since this acquisition, GTCR has been actively involved in managing Sterigenics's business, including the operation of the Willowbrook facility. (*Id.* ¶¶ 150, 153.) Plaintiffs thus attribute Sterigenics' alleged acts and omissions during and after 2011, related to the release of ethylene oxide, to GTCR as well. (*Id.* ¶ 153.)

## II. Procedural History

Plaintiffs are current and former residents of Willowbrook and other areas situated within several miles of the Sterigenics facility; all are citizens of Illinois. (Complaints ¶ 16, Ex.'s A-K to Mot. Remand.) Each has been diagnosed with some form of cancer. (*Id.* ¶ 16-17.) In 2018, Plaintiffs individually filed lawsuits against Defendants in the Circuit Court of Cook County, raising state law claims for negligence, negligent training, negligent supervision, willful and wanton conduct, strict liability for ultrahazardous activity, civil battery, and public nuisance. (*See, e.g.*, *Kamuda* Complaint ¶¶ 72-187.)

4

Defendants thereafter removed all eleven cases to the Northern District of Illinois, asserting diversity jurisdiction under 28 U.S.C. § 1332(a) and federal question jurisdiction under 28 U.S.C. § 1331.  (*See, e.g.*, Notice of Removal [1] ¶ 2; *see also* Mot. Remand at 1 (stating that "all removal petitions raise the same arguments"); Defs.' Opp. Mot. Remand at 1 n.1 (same)).  On December 18, 2018, this court ordered the matters reassigned for the limited purpose of ruling on Plaintiffs' Omnibus Motion to Remand.  (Order Granting Motion to Reassign [34].)  Plaintiffs filed that motion two days later, on December 20, 2018.  (Mot. Remand.)

## DISCUSSION

Federal district courts "may not exercise jurisdiction absent a statutory basis."  *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005)**.**  By statute, Congress grants federal courts jurisdiction over two types of cases: those that "arise under" federal law, 28 U.S.C. § 1331, and those in which there is diversity of citizenship and an amount-in-controversy requirement is met, 28 U.S.C. § 1332(a).  *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019).  Plaintiffs' actions, Defendants argue, meet both sets of requirements.

As the removing parties, Defendants bear the burden of establishing federal jurisdiction.  *Betzner v. Boeing Co.*, 910 F.3d 1010, 1014 (7th Cir. 2018).  In evaluating Defendants' arguments, the court "interpret[s] the removal statute[s] narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court."  *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 758 (7th Cir. 2009); *see also Morris v. Nuzzo*, 718 F.3d 660, 668 (7th Cir. 2013) ("[D]oubts regarding removal are resolved in favor of the plaintiff's choice of forum in state court.").  The court proceeds first by considering whether Defendants have established federal question jurisdiction under § 1331.  Then, if Plaintiffs' claims do not arise under federal law, the court examines whether there is diversity jurisdiction under § 1332(a).

**I.    Federal Question Jurisdiction**

Under 28 U.S.C. § 1331, federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  Federal courts may only

5

exercise jurisdiction under § 1331, the Supreme Court has held, if "a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006) (quoting *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 27–28 (1983)).

Here, it is uncontested that Plaintiffs assert only state law causes of action. Defendants contend, however, that Plaintiffs' claims nevertheless belong in federal court because they raise "substantial issues of federal law." (Defs.' Opp. Mot. Remand at 7.) Principally, Defendants argue that by placing the standard of care at issue, Plaintiffs' negligence claims raise arguments about the weight and meaning of federal standards promulgated by the EPA. Moreover, Defendants stress that Plaintiffs' proof will include data and analysis released by the EPA and by the Agency for Toxic Substances and Disease Registry (the "ATSDR"), and assert that this fact makes federal court the appropriate forum for Plaintiffs' claims. As explained here, however, the court concludes that neither of these purported "federal issues" establish that Plaintiffs' actions to arise under federal law for jurisdictional purposes.

Defendants' argument is based chiefly on the Supreme Court's holding in *Grable & Sons Metal Prods., Inc. v. Darue Engineering & Manufacturing*, which articulates the contemporary test for determining whether a state law claim may "arise under" federal law for jurisdictional purposes. 545 U.S. 308 (2005). In *Grable*, the IRS had seized real property belonging to Plaintiff Grable & Sons Metal Products, Inc. ("Grable") to satisfy a federal tax delinquency, then sold that property to Defendant Darue Engineering & Manufacturing ("Darue"). *Id.* at 310. Grable brought a quiet title action against Darue in state court, contending that Grable's title to the property remained valid because the IRS had failed to comply with a federal statute requiring notice of seizure: 26 U.S.C. § 6335(a). *Id.* at 311. Contending that the quiet title complaint presented a federal question, Darue removed the case to the District Court for the Western District of Michigan. *Id*.

6

Grable moved for remand, but the District Court denied the motion, and the Court of Appeals for the Sixth Circuit affirmed. *Id*.

The Supreme Court saw things differently; the Court concluded that Grable's claim "belongs in federal court." *Id.* at 315. Recognizing that the meaning of § 6335(a) "appear[ed] to be the only legal or factual issue contested in the case," and determining that it was "an important issue of federal law," the Court determined that Grable's action fell into a narrow category of cases in which federal question jurisdiction lies over state law claims. *Id.* at 312, 315. Specifically, the Court held, state law claims support federal question jurisdiction if they "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314. Because interpretation of § 6335 met these criteria, Darue was entitled to remove Grable's action.

The following year, in *Empire Healthchoice Assurance, Inc. v. McVeigh*, the Court emphasized that *Grable* exemplifies a particular "slim category" of cases, however. 547 U.S. at 701. Plaintiff Empire Healthchoice, which administered a health insurance program for federal employees (including Defendant McVeigh) had sued McVeigh in federal court to recover fees McVeigh had himself recovered after settling a tort claim, citing a subrogation clause in the insurance policy's terms. *Id.* at 683. Empire Healthchoice argued that this action arose under federal law because the policy's terms, including the subrogation clause, were negotiated by the Office of Personnel Management pursuant to the Federal Employee Health Benefits Act of 1959. *Id.* at 682–85.

The Court disagreed, holding that Empire Healthchoice's claim was "poles apart from *Grable*" for two principal reasons. *Id.* at 700. First, "[Empire Healthchoice's] reimbursement claim was triggered, not by the action of any federal department, agency, or service, but by the settlement of a personal injury action launched in state court." *Id.* at 700. And second, the "bottom-line practical issue" was not the resolution of a particular federal issue, but rather "the

share of [the] settlement property payable to Empire." *Id*. Thus, whereas *Grable* "presented a nearly 'pure issue of law,' one 'that could be settled once and for all and thereafter would govern numerous tax sale cases,'" Empire Healthchoice's "fact-bound and situation-specific" claim was complicated by issues that are not uniquely federal. *Id.* at 700–01 (quoting R. Fallon, D. Meltzer, & D. Shapiro, HART AND WECHSLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM 65 (2005 Supp.)). Ultimately, although the Court acknowledged that the United States had an interest in the case, and that federal law might prove relevant to the claim, the Court clarified that "it takes more than a federal element 'to open the arising-under door.'" *Empire Healthchoice*, 547 U.S. at 701 (quoting *Grable*, 545 U.S. at 313). And to the extent federal issues may emerge in the course of litigating state law claims, the Court observed, state courts are "competent to apply federal law." *Id*.

Following the Court's decision in *Empire Healthchoice*, lower courts have recognized that the inquiry required by *Grable* "rarely results in a finding of federal jurisdiction." *Evergreen Square of Cudahy v. Wisconsin Hous. & Econ. Dev. Auth.*, 776 F.3d 463, 466 (7th Cir. 2015). By pertinent example, the Seventh Circuit in *Bennett v. Southwest Airlines Co.* rejected the argument that the potential relevance of federal standards to state law negligence claims can cause the claims to arise under federal law. 484 F.3d 907 (7th Cir. 2007). *Bennett* emerged from an incident wherein a commercial airliner skidded past the end of a runway, killing one person and injuring twelve others. *Id.* at 908. The plaintiffs filed tort suits in state court against Southwest Airlines, Boeing, and the City of Chicago, who in turn removed the cases to the Northern District of Illinois. *Id*. The District Court denied plaintiffs' motion to remand, but certified the decision for interlocutory appeal. *Id*.

On appeal to the Seventh Circuit, the defendants argued that "plaintiffs' claims arise under federal law because federal aviation standards play a major role in the claim that [the defendants] acted negligently." *Id*. The Seventh Circuit rejected this argument. Reversing the District Court's denial of remand, the Court of Appeals held that the national regulation of air travel does not,

8

alone, cause an airline negligence action to arise under federal law. *Id.* at 912. Specifically, the Seventh Circuit held that because the defendants in *Bennett* did not contend "that resolution of [the] suit revolve[d] around any *particular* disputed issue of federal law," and because "[s]tate issues, such as the amount of damages, may well predominate," the case fell under the purview of *Empire Healthchoice*. *Id.* at 909–11. In other words, the *Bennett* plaintiffs' tort claims required "a fact-specific application of rules that come from both federal and state law rather than a context-free inquiry into the meaning of a federal law"; under *Empire Healthchoice*, such claims do not support arising-under jurisdiction. *Id.* at 910. Writing more broadly, the Seventh Circuit then concluded: "That some standards of care used in tort litigation come from federal law does not make the tort claim one 'arising under' federal law." *Id.* at 912.

The *Bennett* holding disposes of Defendants' argument here. Defendants argue that because Plaintiffs' claims require adjudication of the proper standard of care, and because Defendants believe they complied with the applicable federal regulations, Plaintiffs are implicitly arguing that federal standards are "insufficient to protect [Plaintiffs'] health and safety," and that "the standard of care is set by . . . some hypothetical or other standard implied in the ATSDR's report." (Defs.' Opp. Mot. Remand at 8.) This, Defendants argue, amounts to a "substantial issue of federal law." But this contention was expressly rejected in *Bennett*. As in *Bennett*, Defendants here rely on the bare existence of federal standards, while failing to identify any particular issue of federal law necessarily raised by the complaints. None of the complaints cite a federal law or regulation, and none of Plaintiffs' claims require proof that a federal law was violated. To the extent Defendants aver that Plaintiffs' negligence claims require proof of non-compliance with federal standards, Defendants are incorrect. The Illinois Pattern Jury Instructions, in defining "negligence" and "ordinary care," expressly provide that "[t]he law does not say how a reasonably careful person would act under [circumstances similar to those shown by the evidence]. That is for [the jury] to decide." ILLINOIS PATTERN JURY INSTRUCTIONS: CIVIL, Nos. 10.01–10.02 (2018).

Thus, even if the application of a federal standard of care were a substantial federal issue—and this court is not convinced it would be—it is certainly not one "necessarily raised" in a complaint, as *Grable* requires. Although Defendants may ultimately choose to defend against Plaintiffs' claims by introducing evidence that they complied with federal law, it is well settled that this would not be a basis for the exercise of federal jurisdiction. *See Chicago Tribune Co. v. Bd. of Trustees of Univ. of Illinois*, 680 F.3d 1001, 1003 (7th Cir. 2012) ("*Grable* does not alter the rule that a potential federal defense is not enough to create federal jurisdiction under § 1331" (citing *Empire Healthchoice*, 547 U.S. 677).).

Defendants do not address *Bennett*. They instead cite two district court cases: *Citadel Securities LLC v. Chicago Board Options Exchange, Inc.*, No. 16 CV 9747, 2017 WL 118419 (N.D. Ill. Jan. 12, 2017), and *Casey v. Denton*, No. 17 CV 00521, 2017 WL 3461363 (S.D. Ill. Aug. 11, 2017). Both of these cases are readily distinguishable from the one at bar, however, as they both involved interpretation of a *particular* federal issue, a key requirement of *Grable*. The plaintiffs in *Citadel* brought a breach of contract action alleging that the defendant security exchanges violated SEC rules "with which defendants [were] bound to comply under § 78s(g)(1) of the [Securities and Exchange Act of 1934]." *Citadel*, 2017 WL 118419, at *4. The complaints thus necessarily alleged that defendants violated 15 U.S.C. § 78s(g)(1), and so the court denied a motion to remand. *Id*. In *Casey*, the plaintiffs brought legal malpractice claims charging the defendants with violating a duty to their clients to file certain pleadings in the context of a federal MDL. 2017 WL 3461363, at *3. The defendants argued, and the court agreed, that determining whether such a duty existed centered on interpretation under the federal MDL statute, 28 U.S.C. § 1407, and so the court denied the plaintiffs' motion to remand. *Id.* at *4.

Here, in contrast, Plaintiffs' claims can succeed without reference to any federal statute. Even if, as Defendants believe, a jury finds that they complied with federal standards, the jury could nevertheless determine that state common law imposes a standard of care higher than that expressly required by federal law. *Cf. International Paper Co. v. Ouellette*, 479 U.S. 481, 497

(1987) (finding that the Clean Water Act's states rights' savings clause permits states to impose stricter standards on the discharge of water than those imposed by federal law, and "may include the right to impose higher-common law as well as higher statutory restrictions"); *Merrick v. Diageo Americas Supply, Inc.*, 805 F.3d 685, 692 (6th Cir. 2015) (describing the Clean Water Act's states' rights savings clause as "analogous" to that in the Clean Air Act, and holding that the Clean Air Act "similarly preserves claims based on the law of the source state"). The focus of these suits is thus not on federal law, but rather on state standards, which exist independently of the CAA. *See also Illinois ex rel. Raoul v. Sterigenics U.S., LLC*, No. 18 C 8010, 2019 WL 1112271, at *4-5 (N.D. Ill. Mar. 11, 2019) (rejecting a federal preemption argument made by Sterigenics in a suit brought by the state of Illinois to recover for alleged state law violations involving Sterigenics' use of ethylene oxide).

The absence of any reference to federal statutes in Plaintiffs' complaints is not a product of "artful pleading," moreover. Defendants themselves fail to identify a discrete federal statute or regulation that a court must interpret to adjudicate Plaintiffs' claims. They instead discuss a host of statistics and analysis from federal agencies, apparently contending that the potential relevance of this evidence amounts to a federal issue under *Grable*. (Defs.' Opp. Mot. Remand at 12.) Defendants cite no authority for the proposition that federal courts are uniquely competent to preside over a case in which evidence has been produced by federal agencies. Section 1331 grants federal courts jurisdiction in cases arising under federal law, not cases involving facts considered or relied on by federal agencies. In fact, the Supreme Court's decision in *Empire Healthchoice* strongly suggests the importance of facts specific to these cases undermines Defendants' claim that it is entitled to a federal forum. *See Empire Healthchoice*, 547 U.S. at 700–01.

Defendants also argue that the Clean Air Act disfavors the use of state law tort actions to seek compensation for harmful air emissions, and contend that Plaintiffs seek to "disrupt and/or ignore the carefully crafted federal emissions regulatory scheme, bypassing the approval program

11

expressly set up by the CAA." (Defs.' Opp. Mot. Remand at 10-11.) This argument has no bearing on the *Grable* test, which asks only whether Plaintiffs' complaints necessarily raise a qualifying federal issue, and not whether federal law has preempted state law claims. *See Illinois ex rel. Raoul*, 2019 WL 1112271, at *5 ("Here, the CAA is material only to the extent that it might provide Sterigenics with a federal defense under the doctrine of preemption.") To the extent Defendants' argument might bear on a potential preemption defense, they have expressly waived it. (Defs.' Opp. Mot. Remand at 6 n.5 ("Sterigenics has never made a preemption argument, nor does it attempt to do so here.").) Because Plaintiffs' state law claims do not "necessarily depend[ ] on resolution of a substantial question of federal *law*," they do not "fit within the special and small category" of cases exemplified by *Grable*, and thus do not arise under federal law. *Empire Healthchoice*, 547 U.S. at 699 (emphasis added). Defendants have not met their burden of establishing that jurisdiction is warranted under 28 U.S.C. § 1331.

## II. Diversity Jurisdiction

28 U.S.C. § 1332(a)(1) vests federal courts with jurisdiction over "civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." Section 1332 requires complete diversity, meaning "no plaintiff may be a citizen of the same state as any defendant." *Altom Transp., Inc. v. Westchester Fire Ins. Co.*, 823 F.3d 416, 420 (7th Cir. 2016). A corporation is a citizen of any state in which it is incorporated and of the state in which its principal place of business is located. 28 U.S.C. § 1332(c)(1); *Altom Transp.*, 823 F.3d at 420. A natural person is a citizen of the state in which she is domiciled. *Altom Transp.*, 823 F.3d at 420.

Plaintiffs assert that they are all citizens of Illinois. (*See* Complaints ¶ 16, Ex.s A–K to Mot. Remand.) They further allege that Sterigenics is "a limited liability company organized under the laws of Delaware and having its headquarters and principal place of business in [Oak Brook, Illinois]." (*Id.* ¶ 19.) Were Sterigenics a corporation, this would end this discussion, as it would render Sterigenics a citizen of Illinois and destroy complete diversity. *See Altom Transp.*, 823

F.3d at 420. As Sterigenics is an LLC, however, its citizenship tracks that of each of its members as of the date a notice of removal was filed. *See Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007). In the removal petition filed in the case originally before this court, Defendants assert that Sterigenics' sole member is a citizen of Delaware and Ohio, making Sterigenics a citizen of Delaware and Ohio. (Notice of Removal ¶ 26.) On their motion for remand, Plaintiffs do not challenge this claim or argue that Sterigenics' citizenship destroys diversity. (*See generally* Mot. Remand.) Instead, Plaintiffs assert that the three other Defendants—Bob Novak, Roger Clark, and GTCR—are citizens of Illinois. (*See, e.g.*, *Kamuda* Complaint ¶¶ 21, 30–31 (stating that Novak and Clark reside in Illinois, and that GTCR's principal place of business is in Illinois).) Defendants do not contest this allegation. They argue, however, that the court may nevertheless exercise diversity jurisdiction under Section 1332 because Novak, Clark, and GTCR are all fraudulently joined.

The fraudulent joinder doctrine exists to prevent plaintiffs from "join[ing] a nondiverse defendant simply to destroy diversity jurisdiction." *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 763 (7th Cir. 2009). It is an exception to Section 1332's complete diversity requirement, providing that "an out-of-state defendant's right of removal premised on diversity cannot be defeated by joinder of a nondiverse defendant against whom the plaintiff's claim has 'no chance of success.'" *Morris v. Nuzzo*, 718 F.3d 660, 666 (7th Cir. 2013) (quoting *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir.1992)). To demonstrate that fraudulent joinder has taken place, the removing party bears the "heavy burden" of showing that "after resolving all issues of fact *and law* in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant." *Id.*[4] In other words, the defendant must show that the plaintiff's claims against non-

---

[4] The burden to establish fraudulent joinder, courts in this circuit often note, "is even more favorable to the plaintiff than the standard that applies to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *Schur*, 577 F.3d at 764 (collecting cases). Defendants attempt to shift the test in their favor by framing the inquiry in more generous terms than the Seventh Circuit has endorsed. For example, Defendants incorrectly state that the court should scrutinize

13

diverse defendants have "no chance of success." *Poulos*, 959 F.2d at 73.[5] If the removing party meets this burden as to the non-diverse defendants, the court may disregard, for jurisdictional purposes, the citizenship of those defendants. *Schur*, 577 F.3d at 763.

Defendants have not met this burden as to Bob Novak or Roger Clark. The complaints charge Novak and Clark with common law negligence, asserting that Novak and Clark had "a duty to exercise ordinary care for the health, safety, and well-being of Plaintiff[s] and those living and working in the area surrounding the Sterigenics facility in Willowbrook." (*See, e.g.*, *Kamuda* Complaint ¶¶ 122, 137.) Plaintiffs allege that Novak and Clark "knew or should have known that the [ethylene oxide] gas emitting from the Sterigenics facility . . . would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of the persons breathing it," yet handled the gas in a negligent manner. (*Id.* ¶¶ 138, 144.) Novak, specifically, is alleged to have "[p]ermitted chamber doors to remain open during and/or after the sterilization process" and otherwise "fail[ed] to employ safe methods to adequately control, reduce, minimize, and/or mitigate [ethylene oxide] emissions from [the] Willowbrook facility." (*Id.* ¶ 125.) Clark is alleged to have, *inter alia*, "[i]naccurately calibrat[ed] internal [ethylene oxide] monitors to allow for erroneous monitoring results" and "overload[ed] the vacuum system such that pollution control for one or more chambers was inoperable and/or ineffective." (*Id.* ¶ 139.)

---

Plaintiff's motives for joining the non-diverse defendants, citing *Imber v. Home Depot USA, Inc.*, No. 17 CV 7777, 2018 WL 5977923, at *2 (N.D. Ill. Nov. 14, 2018). (*See* Defs.' Opp. Mot. Remand at 19-21.) In *Imber*, a magistrate judge described the fraudulent joinder doctrine as "one relevant method articulated by the Seventh Circuit for 'scrutinizing the plaintiff's motives for joining a non-diverse party.'" (*Id.* at *2 (quoting *Schur*, 577 F.3d at 764)). *Imber* does not state that the method itself actually involves scrutinizing a plaintiff's motives, nor does its holding rest on any findings about the plaintiff's motives. Indeed, the very sentence in *Imber* that Defendants purport to quote was itself quoting a Seventh Circuit opinion that frames the burden as requiring proof that Plaintiffs' claim "simply has no chance of success, *whatever plaintiff's motives*." *Schur*, 577 F.3d at 763 n.9 (quoting *Poulos*, 959 F.2d at 73).

[5] Additionally, "[a]ctual fraud in alleging jurisdictional facts will suffice to invoke the doctrine." *Schur*, 577 F.3d at 763 n.9. Defendants do not render any such allegation here, however. Their sole argument supporting the exercise of diversity jurisdiction is that Plaintiffs' claims have no reasonable chance of success against the non-diverse defendants.

Defendants argue that these claims have no chance of success because, they contend, neither Novak or Clark could have owed a duty to Plaintiffs. Whether a duty exists is a question of law. *Schur*, 577 F.3d at 766 (quoting *Widlowski v. Durkee Foods, Div. of SCM Corp.*, 138 Ill.2d 369, 373, 562 N.E.2d 967, 968 (1990)). And in this aspect of fraudulent joinder analysis, the court applies the law of the forum state. *Id.* at 764. Under Illinois law, "every person owes a duty of ordinary care to all others to guard against injuries which naturally flow as a reasonably probable and foreseeable consequence of an act, and such a duty does not depend upon contract, privity of interest or the proximity of relationship, but extends to remote and unknown persons." *Id.* at 766 (quoting *Widlowski*, 138 Ill.2d at 373, 562 N.E.2d at 968).

Defendants have not articulated a cogent argument for why this broad standard could not possibly apply to Novak and Clark. Defendants assert that "[t]here are no factual allegations or evidence to suggest that Defendants Clark or Novak could reasonably foresee during the time they worked at the facility . . . that any emissions to which they allegedly contributed would cause Plaintiffs harm." (Defs.' Opp. Mot. Remand at 21–22.) Not so. The complaints expressly allege that Novak and Clark knew or should have known that ethylene oxide posed a danger to the Willowbrook community. (*See, e.g.*, *Kamuda* Complaint ¶¶ 138, 144.) Defendants' counterpoint—that the extent of the impact of Sterigenics' emissions were not known until the release of the ATSDR report in August 2018—at most creates an issue of fact which, under fraudulent joinder analysis, must be resolved in the plaintiffs' favor.

In support of their contention that Novak and Clark could not have owed Plaintiffs a duty under Illinois law, Defendants cite *Hoidas v. Wal-Mart Stores, Inc.*, No. 09-C-7409, 2010 WL 1790864 (N.D. Ill. Apr. 30, 2010). The plaintiff in *Hoidas*, who was injured in the parking lot of a Wal-Mart store, sued both the store, a diverse party, and its manager, a non-diverse party, in state court. *Id.* at *1. The defendants then removed the case to the Northern District of Illinois, citing diversity jurisdiction. *Id.* On the defendants' motion to remand, the District Court noted that the complaint failed to allege that the manager—who the court described as merely "a corporate

15

officer"—had any active involvement in the alleged tort, or responsibility for maintaining the parking lot. *Id.* at *1–2. Rather, the plaintiff sought to hold the manager liable solely by virtue of his position as an officer of the corporate defendant. *Id.* at *2. Noting that "[t]he law of agency does not impute a duty that the principal owes to a third party onto an agent," as well as the absence of any allegation from which an Illinois court could conclude that the manager himself owed a duty to plaintiff, the court held that the manager was fraudulently joined, and assumed jurisdiction over the case. *Id*.

Here, in contrast, both Novak and Clark are alleged to have been personally involved in the use of ethylene oxide, and both are alleged to have been able to foresee the danger that the use of ethylene oxide posed to the Willowbrook community, of which the Plaintiffs were a part. Resolving all issues of fact and law in Plaintiffs' favor, an Illinois court could find both Novak and Clark liable for negligence; this compels the conclusion that neither was fraudulently joined. The court therefore declines to ignore, for jurisdictional purposes, the fact that Novak and Clark destroy complete diversity. Defendants have failed to meet their burden that jurisdiction exists under 28 U.S.C. § 1332(a)(1).[6]

## **CONCLUSION**

Plaintiffs' Omnibus Motion for Remand [37] is granted, and the following cases are remanded to the Circuit Court of Cook County: *Schumacher v. Sterigenics U.S., LLC et al.*, No. 1:18-cv-07528; *Kamuda, et al. v. Novak et al.*, No. 1:18-cv-07313; *Flanagan, et al. v. Novak et al.*, No. 1:18-cv-07314; *Moawad, et al. v. Sterigenics U.S., LLC et al.*, No. 1:18-cv-07315; *Harast v. Sterigenics U.S., LLC et al.*, No. 1:18-cv-07390; *Teresa Fornek v. Sterigenics U.S., LLC et al.*, No. 1:18-cv-07402; *Shawn Fornek v. Sterigenics U.S., LLC et al.*, No. 1:18-cv-07688; *Kennedy v. Sterigenics U.S. LLC et al,* No. 1:18-cv-07828; *Nedumgottil v. Sterigenics U.S. LLC et al.*,

---

[6] As this conclusion alone deprives the court of jurisdiction, the court declines to rule on Defendants' additional argument that GTCR cannot be held liable on the "direct participant" theory of liability. (*See* Defs.' Opp. Mot. Remand at 19.)

No. 1:18-cv-07830; *Govic v. Sterigenics U.S., LLC et al.,* No. 1:18-cv-08056; and *Haller v. Sterigenics U.S., LLC et al.*, No. 1:18-cv-08057.

ENTER:

Dated: August 15, 2019

_____
REBECCA R. PALLMEYER
United States District Judge